[Civ. No. 12992. First Dist., Div. One. Mar. 23, 1946.]

SYLVIA ISAACS, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

622

Joseph A. Brown for Appellant.

John J. O'Toole, City Attorney, and Thos. C. Ryan and Reynald J. Bianchi, Deputies City Attorney, for Respondent.

WARD, J.—This is an appeal from a judgment of nonsuit entered at the close of plaintiff's evidence in a suit for personal injuries sustained when the automobile operated by plaintiff's husband, in which plaintiff was riding, was struck by a fire apparatus of defendant city at the intersection of Fourth and Bryant Streets in San Francisco. The accident occurred on October 12, 1939. The complaint was filed January 18, 1940. The date of the trial was April 25, 1945. The transcript on appeal was filed June 20, 1945; appellant's opening brief on October 10, 1945; respondent's brief on December 21, 1945, and appellant's reply brief on January 14, 1946.

Plaintiff rested her case on her own testimony and that of her husband. In substance, the husband and wife testified that they were proceeding in the wife's automobile south on Fourth Street. At the intersection of Bryant Street, the red stop light showed on the "stop-and-go" automatic signal, which caused them to stop next to the curb and near the signal. A large building interfered with the view west on Bryant Street except for a space of less than one of the city blocks located in that area. The chief of the fire department in his official car crossed the intersection with the siren sounding, traveling on Bryant Street toward the east. The only open window in plaintiff's car was the one to the left of the

driver. The vehicular sign turned to green and showed the word ''Go.'' Each occupant looked to the right, saw no vehicle approaching and heard no bell nor siren and the driver started south, with eyes ahead, in low gear to cross the intersection. The automobile was hit approximately midway in the intersection by a fire truck. Plaintiff, as the result of the accident, suffered certain injuries.

The motion for nonsuit was presented as follows: ''May it please your Honor, the defendant City and County of San Francisco at this time makes a motion for a non-suit on the ground that the plaintiff has failed to prove any wilful misconduct on the part of the defendant City and County of San Francisco, which is necessary to be proved in the type— in a case of this type before liability can be fastened on the city;

''And secondly, on the ground that the evidence affirmatively shows as a matter of law that the plaintiff was guilty of contributory negligence which proximately contributed to her own injuries at the time of the accident.'' It is conceded that any negligence on the part of the driver husband would .be imputable to the wife who was in the car at the time of the accident. (*Moore* v. *Miller*, 51 Cal.App.2d 674 [125 P.2d 576].)

Respondent does not seek to sustain the trial court's action on the first ground of the motion for nonsuit urged in the court below. However, in view of the conclusion reached hereinafter with respect to the second ground, and the general rule that if the trial court's action may be sustained on any ground, such action must be affirmed, it is necessary to consider what acts on the part of a county employee must be proved by a plaintiff in order to establish a prima facie case under section 400 of the Vehicle Code.

In 1939 the pertinent portion of the Vehicle Code with respect to liability for injuries sustained through negligently operated county vehicles provided: (§ 400.) ''The State, and every county, city and county, municipal corporation . . . owning any motor vehicle is responsible to every person who sustains any damage by reason of death, or injury to person or property as the result of the negligent operation of any said motor vehicle by an officer, agent, or employee or as the result of the negligent operation of any other motor vehicle by any officer, agent or employee when acting within the scope of his office, agency or employment; and such person

may sue the State, county, city and county, municipal corporation . . . in any court of competent jurisdiction in this State in the manner directed by law. In every case where a recovery is had under the provisions of this section . . . [the] subdivision of the State shall be subrogated to all the rights of the person injured, against the officer, agent or employee, as the case may be, and may recover from such officer, agent or employee, the total amount of any judgment and costs recovered against the State, county, city and county. . . .''

(§ 401.) ''No member of any . . . fire department maintained by a county . . . is liable for civil damages on account of personal injury to . . . any person . . . resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call . . . or when responding to but not upon returning from a fire alarm.''

(§ 44(a).) ''An 'Authorized emergency vehicle' is a . . . vehicle publicly owned and operated by a . . . fire department . . . in responding to emergency calls. . . .''

(§ 554.) ''Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren . . . : (1) The driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection and thereupon stop and remain in such position until such authorized emergency vehicle has passed, except when otherwise directed by a police or traffic officer.''

To establish a prima facie case under these sections, all the facts that plaintiff was called upon to prove in support of the allegations of the complaint were that on or about the date of the alleged accident the plaintiff was riding in an automobile at or near the place designated in the complaint, and that the automobile was struck by a municipal vehicle under the control of employees of the city and county of San Francisco in the actual performance of their duties, and that the municipal vehicle was operated in a negligent manner; that plaintiff sustained injuries as the result of the negligence of the municipality or its agency; and, finally, that a claim had been filed and rejected prior to the filing of the complaint. This last allegation is admitted in the answer. That the fire apparatus was owned by the city and county of San Francisco and ''was being operated in the capacity of an authorized emergency vehicle and was responding to an

alarm of fire'' is specially made an issue to be proven as an affirmative defense based upon the allegations of the answer. There was introduced testimony supporting the allegations of the complaint. In the absence of any explanation an inference of negligence on the part of defendant may be drawn from the fact that the ''Go'' sign was on for vehicles running north and south; that the ''Stop'' sign was against the fire apparatus, and that *no siren was being sounded.* It is possible that the driver of an emergency vehicle may be guilty of ''wilful misconduct,'' but it is not necessary to prove any more than negligence, giving due regard to the particular circumstances involved, in a suit under Vehicle Code section 400. By section 454 of the Vehicle Code negligence could not be predicated on breaches of traffic laws when the ''vehicle is . . . responding to but not upon returning from a fire alarm'' and ''when the driver of said vehicle sounds a siren as may be reasonably necessary,'' but this exemption from the necessity of obeying traffic laws ''shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section.''

''If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his 'due regard' for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended.'' (*Lucas* v. *City of Los Angeles,* 10 Cal. 2d 476, 483 [75 P.2d 599].) ''It is evident that the right of way of fire apparatus over other vehicles is dependent upon 'due regard to the safety of the public' only in so far as such 'due regard' affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus.'' (*Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302, 311 [202 P. 37, 19 A.L.R. 452].) ''The expression 'arbitrary exercise of the privileges' has also caused

626

some confusion. Since the vehicles are excluded from the restrictions of speed and right of way, negligence cannot be predicated on those elements if proper warning has been given. These are among the 'privileges' which are granted by the statutes. An arbitrary exercise of them may rest upon the question whether an emergency in fact existed. The statute has determined this question in part by the limitation in section 120 to cases where the emergency vehicle is engaged in the chase of violators of the law or in response to a fire alarm.'' (*Lucas* v. *City of Los Angeles, supra,* pp. 483-484.) ''In such cases speed, right of way, and all other 'rules of the road' are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, whether there was an arbitrary exercise of these privileges.'' (*Lucas* v. *City of Los Angeles, supra,* p. 486.)

█ In the present case whether a siren signal was given, and the necessity of giving a signal, are questions of fact which on motion for nonsuit must be determined in plaintiff's favor. Plaintiff's husband testified that he did not hear a signal by the truck or engine that hit the automobile. In *Rogers* v. *City of Los Angeles,* 6 Cal.App.2d 294, 296 [44 P.2d 465], the court said: '' 'The weight to be given negative testimony, where it is claimed that signals were not given, is a question for the jury; and such evidence is sufficient to sustain a verdict even though in conflict with other evidence that a warning was actually given. (*Thompson* v. *Los Angeles Ry. Co.,* 165 Cal. 748 [134 P. 709] ; *Keena* v. *United Railroads,* 197 Cal. 148 [239 P. 1061].)' '' (See, also, *Stone* v. *San Francisco,* 27 Cal.App.2d 34 [80 P.2d 175].) From the foregoing it is concluded that on the first ground for a nonsuit the evidence introduced was sufficient to justify a denial of the motion.

The question of contributory negligence as a matter of law presents the further question which is mainly relied on by respondent to sustain the trial court's action.

In considering the merits of the respective contentions of, and cases relied on by, appellant and respondent, certain general principles are to be noted. █ A pedestrian or an automobilist who is aware of the approach of a vehicle about to cross an intersection in a manner or under such circumstances as to cause a reasonable person to perceive that danger

is imminent, and who persists in an onward course, is guilty of negligence as a matter of law. (*McHugh* v. *Market St. Ry. Co.*, 29 Cal.App.2d 737 [85 P.2d 467]; *Glickman* v. *Pacific Elec. Ry. Co.*, 54 Cal.App.2d 454 [129 P.2d 132]; *Flores* v. *Los Angels Railway Corp.*, 15 Cal.App.2d 576 [59 P.2d 856]; *Weissman* v. *Seehusen*, 55 Cal.App.2d 391 [131 P.2d 10]; *Jonas* v. *Los Angeles Railway Corp.*, 57 Cal.App.2d 824 [136 P.2d 39]; *Anderson* v. *Western Pacific R. R. Co.*, 17 Cal.App. 2d 244 [61 P.2d 1209]; *Chase* v. *Thomas*, 7 Cal.App.2d 440 [46 P.2d 200].)

A pedestrian or an automobilist crossing an inter-section is under a continuing duty to use ordinary care. The amount of care to be used depends upon the facts of the particular case, though definite guides are available covering certain circumstances. In *Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776, 780 [89 P. 1109], the court said: "Manifestly it is impossible for one driving a vehicle along a street to look in both directions at once, and it should ordinarily be left to the jury to determine, under the circumstances of each particular case, what amount of vigilance was requisite in order to constitute due care." (See, also, *Wright* v. *Los Angeles Ry. Corp.*, 14 Cal.2d 168 [93 P.2d 135]; *Nederveld* v. *Bohlander Truck Co.*, 52 Cal.App.2d 539 [126 P.2d 657].) The "ordinary care" may not consist in all cases in looking in a certain direction. In *Young* v. *Tassop*, 47 Cal.App.2d 557 [118 P.2d 371], the court distinguished the facts in that case from the facts in *Flores* v. *Los Angeles Railway Corp.*, *supra*, as follows (pp. 564-565) : "But a pedestrian crossing under such circumstances is not under a continuing duty to look to the left; he is only under a continuing duty to use ordinary care. . . . Here the plaintiff did look before leaving the curb, saw no cars coming and heard no horn sounded, and saw other pedestrians crossing to her left, who would naturally tend to slow the progress of any approaching car. She then started across, walking only eight feet, and as she said, 'the first thing I knew I was knocked down.' It does not appear that the automobile was in plain sight when she looked; other people crossing the street may have obscured her view of it. At the speed it was going it must have been beyond her clear field of view when she looked. The question whether, under all the circumstances, she was negligent in not looking again to her left while she walked this eight feet is one on which there is room for an honest difference of

opinion between men of average intelligence, and it is therefore one of fact on which the jury's finding is conclusive. (*Salomon* v. *Meyer, supra,* 1 Cal.2d 15 [32 P.2d 631].)'' In *Zehnder* v. *Spaulding,* 53 Cal.App.2d 268 [127 P.2d 620], it appears that the driver in crossing an intersection looked to the right and left. At pages 271-272 the court said: ''In the instant case whether respondents, particularly the driver of the car, John E. Zehnder, exercised reasonable care in keeping a proper outlook and whether he acted as a reasonable man in not again looking to the right before he proceeded across the intersection were questions of fact for the court to determine and, having resolved them in favor of respondents, this court is powerless to interfere.'' The rule may be stated: ''When a person takes no precautions at all for his own safety and is injured, and this conclusion is uncontroverted, contributory negligence is a question to be decided by the court. (*White* v. *Davis,* 103 Cal.App. 531, 542 [284 P. 1086]; *Stephens* v. *Kaufmann,* 137 Cal.App. 328, 331 [30 P.2d 536].) If evidence is introduced relative to the degree of requisite vigilance, and the inferences therefrom are honestly debatable, it becomes a question of fact for the jury to determine. (*Gore* v. *Market Street Ry. Co.,* 4 Cal.2d 154 [48 P.2d 2]; *Salomon* v. *Meyer,* 1 Cal.2d 11, 15 [32 P.2d 631]; *Anderson* v. *Market Street Ry. Co.,* 116 Cal.App. 282, 285 [2 P.2d 529].) In the instant case whether respondent looked in the direction from which appellant was approaching, whether the point from which observation was made was prudently selected, whether respondent should have seen appellant's car within a distance of sixty feet, whether respondent should have looked north and south, or north alone, and whether due vigilance was observed continuously, were disputable questions of fact upon which reasonable minds might legitimately debate and honestly reach different conclusions. The question was properly submitted to the jury, and its finding under all the circumstances of the case is conclusive upon appeal.'' (*Lavin* v. *Fereira,* 10 Cal.App.2d 710, 712 [52 P.2d 518]; see, also, *Lang* v. *Barry,* 71 Cal.App.2d 121 [161 P.2d 949]; *O'Brien* v. *Schellberg,* 59 Cal.App.2d 764 [140 P.2d 159].)

█ Under all the circumstances in this case, whether either the husband or the wife should have looked or listened a second or third time before starting the automobile into the intersection, or when they were in a position to look

farther toward the west on Bryant Street, are questions of fact upon which ordinary jurors might reasonably differ. For the foregoing reasons the motion for a nonsuit should have been denied.

The judgment on the order of nonsuit is reversed.

Peters, P. J., and Knight, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 20, 1946.